UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GUILLERMO JACQUEZ, on behalf of Peter Jacquez, a minor, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>HEALTH & WELFARE DEPARTMENT OF THE CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY (a/k/a Chicago Laborers' Welfare Fund), )<br>)<br>Defendant. ) | Case No. 13-cv-9221<br><br>Judge John W. Darrah |

## MEMORANDUM OPINION AND ORDER

Plaintiff Guillermo Jacquez ("Jacquez") filed a Complaint against Defendant, the Health & Welfare Department of the Construction and General Laborers' District Council of Chicago and Vicinity (the "Fund"), asserting that the Fund violated § 502(a)(1)(B) of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132. The parties filed cross-motions for summary judgment as to Count I of the Complaint.[1] For the reasons set forth more fully below, both Motions for Summary Judgment are denied; and the matter is remanded for a redetermination of benefits eligibility.

## LOCAL RULE 56.1

Local Rule 56.1(a)(3) requires the moving party to provide "a statement of material facts as to which the party contends there is no genuine issue for trial." *Ammons v.*

---

[1] Count II of the Complaint was dismissed on June 18, 2014.

*Aramark Uniform Servs.*, 368 F.3d 809, 817 (7th Cir. 2004). Local Rule 56.1(b)(3) requires the non-moving party to admit or deny every factual statement proffered by the moving party and to concisely designate any material facts that establish a genuine dispute for trial. *See Schrott v. Bristol-Myers Squibb Co.*, 403 F.3d 940, 944 (7th Cir. 2005). Pursuant to Local Rule 56.1(b)(3)(C), the nonmovant may submit additional statements of material facts that "require the denial of summary judgment. Local Rule 56.1(b)(3)(C) further permits the nonmovant to submit a statement "of any additional facts that require the denial of summary judgment . . . ." To the extent that a response to a statement of material fact provides only extraneous or argumentative information, this response will not constitute a proper denial of the fact, and the fact is admitted. *See Graziano v. Vill. of Oak Park*, 401 F. Supp. 2d 918, 936 (N.D. Ill. 2005). Similarly, to the extent that a statement of fact contains a legal conclusion or otherwise unsupported statement, including a fact that relies upon inadmissible hearsay, such a fact is disregarded. *Eisenstadt v. Centel Corp.*, 113 F.3d 738, 742 (7th Cir. 1997).

## BACKGROUND

The following facts are taken from the parties' statements of undisputed material facts submitted in accordance with Local Rule 56.1.

The Fund is an employee welfare benefit plan (the "Plan") governed by ERISA. (Dkt. 48, ¶ 4.) The Plan provides medical benefits to eligible participants and beneficiaries. (*Id.*) Jacquez was a participant in the plan during all relevant times; and his minor son, Peter, was also a beneficiary under the Plan. (*Id.* at ¶ 5.) The Plan gave full discretionary authority to the Trustees to determine eligibility for benefits, to interpret the Plan, and to interpret all documents, rules, procedures, and terms of the Plan. (*Id.* at ¶ 9.) The Plan states that all expenses must be medically necessary in order to be eligible for coverage and defines medically necessary as:

> Services, treatments or supplies ordered by your Physician that are: Required to identify or treat an injury or illness; Appropriate and consistent with the symptoms, diagnosis or treatment of the condition, disease, illness or injury; in keeping with acceptable National Standards of Good Medical Practice; and the most appropriate that can be safely provided to you under the circumstances on a cost effective basis.

(*Id.* at ¶¶ 6-7.) The Plan specifically excludes coverage for expenses for Maintenance or Developmental Care, which is more fully set out below. (*Id.* at ¶ 8.)

Peter Jacquez ("Peter") was born in 2007 and has been diagnosed with cerebral palsy and spastic quadriplegia. (*Id.* at ¶ 10.) Peter began receiving physical therapy at Rehabilitation Institute of Chicago on June 2, 2011. (*Id.* at ¶ 11.) The notes from that visit indicate that he did not have age-appropriate functional level of activities of daily living, mobility, instrumental level, and cognitive-communication skills. (*Id.*) The physical therapist found that Peter would benefit from physical therapy 1-2 times a week to improve function. The therapist noted that Peter reported no pain. (*Id.*) On June 16, 2011, the physical therapy notes indicated that the chief complaint was decreased strength and balance which was limiting independent ambulation. (*Id.* at ¶ 12.) The therapist noted that physical therapy was needed to increase strength and balance to increase Peter's independence with functional mobile skills and age appropriate activity. (*Id.* at ¶ 12.) Again, no pain was reported. (*Id.* at ¶ 12.) Peter continued physical therapy treatment 1-2 times a week through July 19, 2011. (*Id.*) On each of the physical therapy visits, no pain was recorded; the impairments/limitations were listed as ambulation, balance, bed mobility and coordination/proprioception deficits; and the stated goals were related to transitional movements, independent ambulation and increasing functional mobility. (*Id.* at ¶13.)

On September 21, 2011, the Fund notified Plaintiff that Peter's physical therapy was not covered under the Plan. (*Id.* at ¶ 14.) The Fund stated that physical therapy and occupational therapy were covered when "previously fully developed skills were lost or impaired due to injury

3

or illness." (*Id.*)  The Fund further explained that "[d]evelopmental care provided to a patient who has not previously reached the level of development expected for the person's age is not covered under the Plan." (*Id.*)  Plaintiff appealed the Fund's denial on March 27, 2012, and asserted that physical therapy was necessary to maintain Peter's progress. (*Id.* at ¶ 15.)  Plaintiff included a letter from Dr. Luciano Dias from the Rehabilitation Institute of Chicago.  (*Id.* at ¶ 16.)  The letter stated that Peter was to have surgery on April 5, 2012, to treat bilateral hop subluxation, and recommended intensive rehabilitation.  (*Id.*)  Dias also recommended that Peter be involved in a physical therapy program, including physical, occupational, and speech therapy.  (*Id.*)  The goal of physical therapy was "supported standing with continued intervention." (*Id.*)  The goals of occupational therapy included core/scapular strengthening, increased sitting/balance tolerance, and functional positioning for use of upper extremities in play, self-feeding, and other activities with the use of bilateral hand and wrist splints.  (*Id.*)  The goals of speech therapy were comprehension and expression; and it was noted that Peter had shown improvement in responding to verbal prompts, expressing himself in 3-4 word utterances, and learning breath control.  (*Id.*)

The Trustees of the Fund's Claim Committee (the "Claim Committee") reviewed Plaintiff's appeal at its meeting on May 3, 2012.  (*Id.* at ¶17.)  The Claim Committee referred the file out for an independent medical opinion.  (*Id.*)  Dr. Daniel Rosenberg, who is board certified in physical medicine, rehabilitation, and pain management, reviewed Peter's file on May 23, 2012.  (*Id.* at ¶ 18.)  Rosenberg's report stated:

> [The therapy] does appear to be Rehabilitative in nature, however, this apparently is excluded from the Welfare Plan, Number 22 B which notes excluded is not rehabilitative in nature (restoring fully developed skills that were lost due to injury or illness). This patient, at this age, has no fully developed skills. However, the prematurity and brain bleed with subsequent development of spastic quadriplegia does appear to fall under wither injury or illness. However, in

4

> reviewing the records provided for my review it does not appear to be covered from the description on Page 26, Chicago Laborers' Welfare Plan. The treatment provided to this patient appears reasonable and medically indicated although with records provided for my review with a reasonable degree of medical certainty it does not appear to be covered under the specific plan at this juncture.

*See* (Dkt. 42, ¶ 27.) Rosenberg found that the physical and occupational therapy treatment was excluded under the Plan's exclusion for Maintenance or Developmental Care. (Dkt. 48, ¶ 18.) He stated with a reasonable degree of medical certainty that the physical and occupational therapy was not covered under the Plan. (*Id.*) Rosenberg stated that physical therapy would be covered for an acute injury or surgical procedures but otherwise is not covered for developmental care. (*Id.*) Rosenberg also explained that, since Peter did not have fully developed skills, the therapy was not rehabilitative in nature. (*Id.*) The Claim Committee reviewed Dr. Rosenberg's report and decided to uphold the benefit denial on July 7, 2012. (*Id.* at ¶ 19.) The Fund notified Plaintiff of this decision in a letter dated July 10, 2012. (*Id.* at ¶ 20). The letter explained that he services provided were for developmental care and not covered under the Plan. (*Id.*)

Plaintiff's attorney requested that the Fund revisit their denial of the appeal on March 19, 2013. (*Id.* at ¶ 21). Under ERISA and the terms of the Plan, Plaintiff was not entitled to any further appeals. (*Id.* at ¶ 22.) However, the Fund allowed Plaintiff to submit additional evidence. (*Id.*) Plaintiff submitted a letter from Dias, dated February 18, 2013, which stated in part:

> The PT objective is to treat the sequelae and underlying ailments resulting from his cerebral palsy, [and] spastic quadriplegia. If left untreated the hypertonia will increase[,] resulting in the need for corrective surgery. In addition to the sitting, supported walking[,] etc. achieved with PT intervention, there is the benefit of decreasing the pain secondary to his hypertonia/spasticity.

(Dkt. 42, ¶ 19.) Plaintiff also submitted a letter from Dr. Deborah Gaebler-Spira, the Director of the Cerebral Palsy Program at the Rehabilitation Institute of Chicago, dated February 26, 2013,

which stated in part: "[Peter's] condition also places increased contractures and pain due to limited [range of movement] impacted by his spasticity." (*Id.* at ¶ 22.) On July 2, 2012, the Claim Committee declined to change their previous decision. (*Id.* at ¶ 30.) Plaintiff was informed of this through a letter, dated July 10, 2012. (*Id.* at ¶ 32.)

Plaintiff filed the present suit on December 26, 2013. (Dkt. 1.)

## LEGAL STANDARD

*Summary Judgment*

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Courts deciding summary judgment motions must view facts "in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007) (quoting Fed. R. Civ. P. 56). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party has the initial burden of establishing that there is no genuine dispute as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the moving party meets this burden, "[t]he nonmoving party must point to specific facts showing that there is a genuine issue for trial." *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009). The evidence must be such "that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

*Standard of Review for ERISA Plan*

A denial of benefits is reviewed using a *de novo* standard, "unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When the terms of a plan provide for such discretion, judicial review of the administrator's decision is limited to an arbitrary-and-capricious standard, under which an administrator's decision will be upheld 'as long as (1) it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, (2) the decision is based on a reasonable explanation of relevant plan documents, or (3) the administrator has based its decision on a consideration of the relevant factors that encompass the important aspects of the problem.'" *Tompkins v. Cent. Laborers' Pension Fund*, 712 F.3d 995, 999 (7th Cir. 2013) (quoting *Hess v. Hartford Life & Accident Ins. Co.*, 274 F.3d 456 (7th Cir. 2001)). The arbitrary and capricious standard is not a rubber stamp; a denial will not be upheld when there is an absence of reasoning in the record to support it. *See Hackett v. Xerox Corp. Long-Term Disability Income Plan*, 315 F.3d 771, 774-75 (7th Cir. 2003).

Plaintiff argues that *Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105 (2008), requires a heightened review standard that takes into account the inherent conflict of the same administrator, "both evaluating and paying benefits claims." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 106 (2008) ("*Glenn*"). However, the Seventh Circuit has "already considered and rejected the argument that *Glenn* requires a 'heightened arbitrary and capricious standard.'" *Black v. Long Term Disability Ins.*, 582 F.3d 738, 744 (7th Cir. 2009) (citing *Leger v. Tribune Co. Long Term Disability Benefit Plan*, 557 F.3d 823, 831 (7th Cir.2009)).

7

Additionally, the Seventh Circuit has recently held that a conflicts analysis was unnecessary "when the plan at issue was a multi-employer welfare plan whose trustees consisted of an equal number of union and employer representatives, whose union representatives had 'no discernible incentive to rule against an applicant,' and whose trustees were unanimous in their ruling." *Tompkins*, 12 F.3d at 1000-01 (quoting *Manny v. Cent. States, Se. and Sw. Areas Pension & Health & Welfare Funds*, 388 F.3d 241, 243 (7th Cir.2004)). Plaintiff argues that *Tompkins* was based on *Manny*, which was decided before the Supreme Courts' decision in *Glenn*. (Dkt. 43, p. 8). But *Tompkins* was also based on *Raybourne v. Cigna Life Ins. Co. of New York*, 700 F.3d 1076 (7th Cir. 2012), which extensively discussed *Glenn* and conflicts of interest. *See Raybourne*, 700 F.3d at 1081-82.

The parties do not dispute that the administrator of the Fund has been given discretion by the Plan document. (Dkt. 48, ¶ 9.) The parties also do not dispute that the Fund is a multi-employer welfare plan whose trustees consist of an equal number of union and employer representatives. *Glenn* simply requires that a conflict of interest be one factor among many in determining whether there was an abuse of discretion. *Glenn*, 554 U.S. at 116. *Glenn* also provides that a conflict of interest proves more important where circumstances suggest a higher likelihood that it affected the benefits decision. *Id.* at 117. Plaintiff does not allege any particular incentive to rule against his application for benefits aside from the inherent conflict discussed in *Glenn*. Therefore, while the conflict of interest is a factor that must be considered, there is no evidence to show that it is a particularly strong factor in this case.[2]

---

[2] Plaintiff repeatedly cites the phrase "higher-than-marketplace quality standards," but this simply means that the administrator processes claims solely in the interest of the participants and beneficiaries of the plan and provides full and fair review of claim denials. *Glenn*, 554 U.S. at 115.

**ANALYSIS**

The notes from the May 3, 2012, meeting of the Claim Committee do not show that they ignored any pertinent evidence in their initial determination. (Dkt. 41-6, pp. 303-05.) The notes from the July 2, 2012 meeting regarding the appeal show the Claim Committee reviewed Rosenberg's report, and based their decision on that report. (Dkt. 41-6, pp. 317-18.) At the April 2, 2013 meeting, the Claim Committee declined to reverse their original determination to deny benefits. (Dkt. 48, ¶ 26.)

As mentioned above, the Plan excludes coverage for expenses for Maintenance or Developmental Care, which is specifically defined as services or supplies that are:

> (1) Provided to a patient who had not previously reached the level of development expected for the person's age in the following areas: intellectual, physical, receptive and expressive language, learning, mobility, self-direction, capacity for independent living, or economic self-sufficiency;
> (2) Not rehabilitative in nature (restoring fully developed skills that were lost or impaired due to injury or illness) …

(Dkt. 48, ¶ 8.) Based on the physical therapy notes and Dias's letter, the physical and occupational therapy was intended to help Peter reach, for the first time, the level of development expected at his age, or as close to his age as possible given his cerebral palsy. The therapy was also not rehabilitative in nature, as the physical and occupational therapy was not meant to restore fully developed skills. The minutes of the appeal include a review of the minutes of the initial coverage determination. (Dkt. 41-6, pp. 315-17.) However, the Claim Committee clearly based their decision on Rosenberg's report, set out above in part. (Dkt. 41-6, pp. 317-18.) That report shows confusion as to whether the proposed therapy was rehabilitative in nature. At first, Rosenberg states that the treatment is rehabilitative but then says it is excluded because it is not rehabilitative. Finally, Rosenberg stated that Peter had no previous skills to rehabilitate.

9

A court will not substitute its decision for that of the administrator, as long as "the administrator makes an informed judgment and articulates an explanation for it that is satisfactory in light of the relevant facts." *Herman v. Cent. States, Se. & Sw. Areas Pension Fund*, 423 F.3d 684, 692 (7th Cir. 2005) (quoting *Carr v. Gaes Health Care Plan*, 195 F.3d 292, 294 (7th Cir. 1999)). In this case, it is not clear that the administrator made an informed judgment or articulated a satisfactory explanation in light of the relevant facts. According to the minutes, the Claim Committee's decision rested solely on Rosenberg's report. Where the report does not come to a clear conclusion as to whether the therapy is rehabilitative, the Claim Committee abused its discretion in solely relying on that report to deny the appeal.

Plaintiff further argues that the Fund "entirely failed to consider pain in its benefit determination, a benchmark of arbitrary decision-making." (Dkt. 43, p. 7.) However, the only evidence regarding pain came in the letters from Dias and Gaebler-Spira after Plaintiff's final appeal had been heard and denied. (Dkt. 42, ¶¶ 19, 22.) No pain was reported in any of the physical therapy notes, (*id.* at ¶ 13), and Dias' first letter did not talk about pain relief, (*id.* at ¶ 16.) Furthermore, at the time the Claim Committee saw those materials, Plaintiff was not entitled to another appeal, either through ERISA or by the terms of the Plan. (Dkt. 48, ¶ 22.) ERISA only provides for "a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." 29 U.S.C. § 1133(2).

However, even if the Claim Committee did not abuse its discretion in relying on Rosenberg's report in the first appeal, they did abuse their discretion in the second appeal. ERISA regulations do allow for a voluntary second appeal, *see* 29 C.F.R. § 2560.503–1(c)(3), though the voluntary appeal procedure is not part of the plan's statutory obligation to provide

"full and fair review" of the initial decision, *see DaCosta v. Prudential Ins. Co. of Am.*, No. 10–CV–720, 2010 WL 4722393, at *4-5 (E.D.N.Y. Nov. 12, 2010). The Eighth and Eleventh Circuits have found that an administrator's "handling of the voluntary appeal [does] not change the standard of review." *Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 805 (8th Cir. 2014) (citing *Harvey v. Standard Ins. Co.*, 503 Fed.Appx. 845, 848–49 (11th Cir.2013) (*per curiam*) (unpublished)). But, how the plan administrator responds to a claimant's voluntary second appeal may be weighed as a factor in determining whether there was an abuse of discretion. *Prezioso*, 748 F.3d at 805 (citing *Glenn*, 554 U.S. at 115).

Defendant argues that the materials submitted for the voluntary appeal are not part of the record. But, logically, once a plan administrator chooses to engage in a voluntary appeal under the regulations, any materials submitted for that appeal must become part of the administrative record. Otherwise, it would be impossible to say whether the voluntary appeal's result was arbitrary or capricious. *See Perlman v. Swiss Bank Corp. Comprehensive Disability Prot. Plan*, 195 F.3d 975, 981-82 (7th Cir. 1999) ("Deferential review of an administrative decision means review on the administrative record.").

In this case, the administrator's response to the voluntary second appeal was arbitrary and capricious. The minutes of the July 2, 2013 hearing reflect only that:

> It was the decision of the Claim Committee to stand by their original determination to deny benefits for the claimant's physical therapy in accordance with page 26 of the Summary Plan Description, providing for the exclusion of maintenance or developmental care services from covered medical expense benefits.

(Dkt. 41-6, p. 332.) This decision completely fails to address the Plaintiff's evidence, limited though it may be, that the physical and occupational therapy is also for pain management. The Claim Committee made no findings or explanations as to pain management in the record.

11

Therefore, this cause must be remanded for a fresh administrative decision. *See Holmstrom v. Metro. Life Ins. Co.*, 615 F.3d 758, 778 (7th Cir. 2010) ("When an ERISA plan administrator's benefits decision has been arbitrary, the most common remedy is a remand for a fresh administrative decision rather than an outright award of benefits.").

## **CONCLUSION**

For the reasons set forth above, Defendant's Motion for Summary Judgment [39] is denied; and Plaintiff's Motion for Summary Judgment [27] is denied. The case is remanded to the Claim Committee for a redetermination of benefits eligibility.

Date: \_\_\_\_\_December 4, 2014_____  /s/ _____
JOHN W. DARRAH
United States District Court Judge